*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0392p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

CATHY D. FERGUSON,

        *Plaintiff-Appellant,*

    *v.*

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant-Appellee.*

No. 09-4387

———————————

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 08-01478—Vernelis K. Armstrong, Magistrate Judge.

Argued: December 9, 2010

Decided and Filed: December 23, 2010

Before: MOORE, SUTTON, and McKEAGUE, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** W. David Koeninger, ADVOCATES FOR BASIC LEGAL EQUALITY, INC., Toledo, Ohio, for Appellant. Alfred C. Sanchez, SOCIAL SECURITY ADMINISTRATION, Chicago, Illinois, for Appellee. **ON BRIEF:** W. David Koeninger, ADVOCATES FOR BASIC LEGAL EQUALITY, INC., Toledo, Ohio, for Appellant. Alfred C. Sanchez, SOCIAL SECURITY ADMINISTRATION, Chicago, Illinois, for Appellee.

———————————

**OPINION**

———————————

McKEAGUE, Circuit Judge. This is an appeal from an order of the district court affirming the decision of the Commissioner of Social Security denying appellant Cathy Ferguson's applications for disability insurance benefits and supplemental security income. Ferguson identifies two procedural errors which are said to require remand to

1

the Commissioner for further consideration of a fully developed record. For the reasons that follow, we affirm the district court's judgment.

## I.  BACKGROUND

Claimant Cathy D. Ferguson was born in 1952. She has a high school education. From 1988 to 2001, she worked in various capacities—as a materials handler, an assisted living center aid, and a maintenance worker. She has not worked since February 18, 2001, when she alleges she became unable to work due to "anxiety, paranoia, stress, nerves, voices, depression." The extensive medical records show a history of degenerative disc disease, back pain and arthritis, conditions which result in some physical limitations. However, Ferguson's disability claim is based primarily on her mental impairments. There is no question about the existence of mental impairments; the challenge for Ferguson has been in adducing objective medical findings that demonstrate the impairments are so severe as to render her "disabled."

Her applications for disability insurance benefits and supplemental security income were filed on August 13, 2001. A hearing was conducted by Administrative Law Judge William L. Hafer in Lima, Ohio on June 8, 2004. In a 17-page opinion issued on May 25, 2005, the ALJ denied the claims. The ALJ found that Ferguson's physical impairments were not severe, but her mental impairments, identified as residual type schizophrenia and panic disorder, were severe. Still, the ALJ determined that she retained the residual functional capacity to perform unskilled work in settings requiring no more than superficial contact with others without rigid deadlines and high production standards. That is, the ALJ concluded that she remained able to perform her past relevant work as a cleaner and materials handler.

On review, the Appeals Council vacated the ALJ's decision and remanded for a more thorough evaluation of claimant's credibility, complaints of pain, and ability to perform work-related activities. On remand, ALJ Hafer conducted a second hearing, on November 28, 2005 before issuing his second decision on July 25, 2006, again denying Ferguson's claims. The second decision is lengthy and thorough. Again, the ALJ determined that Ferguson had the following impairments: (1) degenerative disc disease

and osteoarthritis of the cervical spine; (2) degenerative disc disease and osteoarthritis of the lumbar spine; (3) hypertension; (4) schizophrenia, residual-type; and (5) panic disorder. The ALJ found these impairments to be "severe," but concluded they did not, alone or in combination, meet the severity requirements for a disability finding. The ALJ reiterated his earlier finding that Ferguson retained the residual functional capacity to perform her past relevant work. Ferguson's request for review by the Appeals Council was denied on April 16, 2008 and the second ALJ decision was upheld. The Appeals Council considered additional medical evidence submitted by Ferguson, but found that it was cumulative and did not alter the outcome.

Ferguson sought judicial review pursuant to 42 U.S.C. § 405(g). The action was commenced in the Northern District of Ohio, where the parties consented to have Magistrate Judge Vernelis K. Armstrong conduct all proceedings in the case and render final judgment, pursuant to 28 U.S.C. § 636(c). On September 30, 2009, the court affirmed the final decision of the Appeals Council approving the ALJ's decision. The district court rejected each of three claims of error asserted by Ferguson, holding: (1) that the ALJ did not improperly ignore a treating physician's opinion, in violation of Social Security Ruling ("SSR") 96-5p; (2) that the ALJ did not err in questioning Ferguson's credibility insofar as the complained of severity and frequency of her symptoms were not supported by the objective medical evidence; and (3) that the ALJ's conclusion that Ferguson had not demonstrated the required level of severity of impairments to meet the definition of "disability" is supported by substantial evidence.

On appeal, Ferguson insists that the ALJ violated SSR 96-5p by discounting a treating physician's opinion without first contacting the physician for clarification and contends the district court erred by declining to remand the matter to the ALJ for reconsideration in light of new evidence never considered by the ALJ.

## II. ANALYSIS

### A. SSR 96-5p Recontact Requirement

The gravamen of Ferguson's first claim is that the ALJ improperly rejected the opinion of one of her treating physicians. The record indicates that Ferguson received treatment from a psychiatrist, Dr. Ruth Erulkar, M.D., from March 2003 until November 2005. The record of Dr. Erulkar's treatment is limited to handwritten office notes, reflecting Ferguson's reported history and subjective complaints, as well as medications prescribed. Among these notes is one statement of opinion by Dr. Erulkar: "[Patient] will not be able to work due to her agoraphobia and panic attacks. Paranoia present." A.R. 428, Note 11/16/05. This note was entered just twelve days before the second hearing conducted by the ALJ and was addressed in his decision as follows:

> On November 16, 2005, Dr. Erulkar stated, "Patient will not be able to work due to her agoraphobia and panic attacks. Paranoia present." (Exhibit 25F, page 2). I reject Dr. Erulkar's opinion, which is not supported by Dr. Erulkar's own objective findings. Dr. Erulkar's notes are handwritten and only partially legible. Generally, they consist of phrases, not complete sentences. It is often difficult to discern when Dr. Erulkar is merely recording the history and complaints offered to her by the claimant and when she is noting objective mental status abnormalities that she has observed. However, they appear to contain mostly the claimant's history and complaints. In any event, viewing the record as a whole, including the paucity of objective abnormalities recorded by the examiners who have evaluated the claimant, along with the claimant's daily activities, social functioning, and general tendency to exaggerate her symptoms, I reject Dr. Erulkar's opinion of disability.

A.R. 69, Decision p. 51.

Ferguson construes the ALJ's treatment of Dr. Erulkar's notes as reflecting the ALJ's failure to understand the bases for her opinion that Ferguson was unable to work. In such a circumstance, Ferguson contends, where the bases for a treating source's opinion are not clear, the ALJ was obliged, pursuant to Social Security Ruling 96-5p, to make every reasonable effort to recontact the source for clarification. Instead, she argues, the ALJ "chose to throw up his hands and disregard the notes entirely." The

district court did not specifically address Ferguson's charge that the ALJ had a duty to recontact Dr. Erulkar. Rather, the court held the ALJ complied with SSR 96-5p by basing his assessment of Ferguson's residual functional capacity upon the record as a whole after conducting an extensive examination of numerous opinions, *including* that of Dr. Erulkar.

On appeal, the district court's ruling on Ferguson's claim that the ALJ failed to apply the correct legal standard is reviewed de novo. *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005).

Social Security Ruling 96-5p purports to "clarify Social Security Administration policy on how we consider medical source opinions on issues reserved to the Commissioner, including . . . whether an individual is 'disabled' under the Social Security Act." Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *1 (July 2, 1996).[1] For purposes of SSR 96-5p, "medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s)." *Id.*, 1996 WL 374183 at *2. The provision at issue recognizes that even though some issues, such as whether an individual is "disabled," are case-dispositive administrative issues reserved to the Commissioner,

> adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.

*Id.* The Ruling goes on to identify two conditions that must both be met to trigger the duty to recontact: "the evidence does not support a treating source's opinion . . . *and* the

---

[1]Social Security Rulings do not have the force and effect of law, but are "binding on all components of the Social Security Administration" and represent "precedent final opinions and orders and statements of policy and interpretations" adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1). In *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004), the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but *assumed* that they are. We make the same assumption in this case.

adjudicator cannot ascertain the basis of the opinion from the record." *Id.* at *6 (emphasis added).**2** While the former of these requirements is met in this case, the latter is not.

First, however, we reject Ferguson's characterization of the ALJ's error. While the ALJ said he "rejected" Dr. Erulkar's "opinion of disability," the language and analysis of his thorough decision clearly refutes the charge that he "threw up his hands" and ignored or disregarded Dr. Erulkar's notes entirely. The ALJ explicitly referred to and quoted from Dr. Erulkar's notes extensively. Further, he actually *relied* on Dr. Erulkar's office notes in rejecting other medical opinions of record. Specifically, he rejected the opinions of Michael D. Wagner, M.D., John M. Miga, Ph.D., and Roseann F. Umana, Ph.D., who all concluded in 2002 that Ferguson's mental impairments were not severe. With reference to Dr. Erulkar's notes, the ALJ found, despite the scarcity of "objective evidence relating to the claimant's mental status, . . . that she has some mental impairments that cause a significant restriction in her ability to perform basic work-related activities." A.R. 69, Decision p. 51. Thus, the suggestion that the ALJ outright dismissed, ignored and disregarded Dr. Erulkar's notes is groundless.

Further, to the extent the ALJ "rejected" Dr. Erulkar's "opinion of disability," he did so not because the bases for her opinion were unclear to him, but because those bases, Ferguson's self-reported history and subjective complaints, were not supported by objective medical evidence:

> The claimant's complaints are not fully supported by the objective and psychological evidence, as has been described in detail above. The most striking aspect of this case is the gulf between the claimant's complaints of extreme mental symptoms (e.g., panic attacks that last all day long, auditory hallucinations, communications from her television and computer directed specifically to her, and paranoid ideation) and the almost complete lack of objective evidence to support her dramatic complaints.

---

**2**These requirements parallel those set forth in 20 C.F.R. § 404.1512(e) and 20 C.F.R. § 416.912(e), which also recognize a duty to recontact in cases where the evidence from the treating physician is inadequate to determine disability and contains a conflict or ambiguity requiring clarification.

A.R. 64, Decision p. 46. Again, the ALJ stated specifically: "I reject Dr. Erulkar's opinion, which is not supported by Dr. Erulkar's own objective findings." A.R. 69, Decision p. 51.

At the time of the ALJ's Decision, the record was largely devoid of objective medical evidence substantiating the complained-of severity of Ferguson's anxiety and paranoia. To this day, Ferguson has not even *argued* that Dr. Erulkar's opinion of disability was in fact based on undisclosed objective medical evidence that would have been forthcoming if only the ALJ had inquired.

This "striking gulf," as the ALJ put it, between Ferguson's subjective complaints and the objective medical evidence, is all the more striking in light of the chronology of the administrative proceedings. When the ALJ made his final decision in July 2006, Ferguson had been granted a "second bite at the apple." She had been advised in the ALJ's first decision, in May 2005, that her subjective complaints were insufficient to establish disability and there was no objective medical evidence indicating that she could not still perform her past relevant work. When this decision was vacated by the Appeals Council and the case remanded for a more thorough evaluation, Ferguson was afforded another opportunity to remedy the identified shortcomings in her claims by supplementing the record and making a more credible showing in a second hearing.

Indeed, Ferguson did supplement the record with additional medical evidence, including additional notes from Dr. Erulkar. Yet, though she was represented by counsel, she failed to adduce additional *objective* medical evidence substantiating the severity of her mental impairments. Dr. Erulkar's office notes are fairly characterized in the ALJ's second opinion as consisting "mostly of the claimant's history and complaints." Dr. Erulkar's only statement of opinion is encapsulated in the one handwritten statement that Ferguson "will not be able to work due to her agoraphobia and panic attacks."

This disability opinion is not explained in any way, is not tied to any physical examination findings or empirical testing results, and is not justified by reference to findings made by other physicians. Though she treated Ferguson for some two years

*during* the pendency of her application for disability benefits, Dr. Erulkar appears not have conducted any testing or prepared any report or letter explaining any objective medical bases for her opinion. As a consequence, the supplemental evidence furnished by Dr. Erulkar amounted, in material part, to no more than a statement of her opinion, based on Ferguson's own self-reporting, that Ferguson was disabled—i.e., an opinion that relates to an issue "reserved to the Commissioner;" an opinion that is "never entitled to controlling weight or special significance." Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *2. *See also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (determination of disability is prerogative of Commissioner, not treating physician, and treating physician's opinion is entitled to substantial deference only if supported by objective medical evidence).

Because Dr. Erulkar's opinion on this issue reserved to the Commissioner was *not* supported by the objective medical evidence, the first precondition triggering the ALJ's recontact obligation was arguably met. As to the second precondition, however, the bases for Dr. Erulkar's opinion cannot be said to be unclear. Ferguson's reported history and subjective complaints were the bases for Dr. Erulkar's opinion. These bases were not unclear. They were in fact sufficient, in light of the other record evidence, to persuade the ALJ that Ferguson suffered from severe mental impairments. But they were insufficient to persuade the ALJ that Ferguson was disabled. This determination, whether Ferguson had carried her burden of showing that she is "disabled," is the case dispositive issue reserved to the ALJ. In this respect, Dr. Erulkar's opinion was deemed unpersuasive not because its bases were unclear, but because they were not corroborated by objective medical evidence.

It follows that the ALJ's SSR 96-5p duty to make every reasonable effort to recontact Dr. Erulkar was not triggered and therefore not violated. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 n.3 (6th Cir. 2009) ("[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the

limitations recommended by that physician."); *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 416 (6th Cir. 2006) (same).**3**

In sum, we find no error. "The burden lies with the claimant to prove that she is disabled." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). The ALJ has discretion to determine whether additional evidence is necessary. *Id.* at 355. Here, the ALJ's thorough opinion demonstrates that he carefully considered the entire record in this case, including Dr. Erulkar's notes; that he identified substantial evidence supporting the determination that Ferguson was not disabled; and that he did not abuse his discretion in failing to recontact Dr. Erulkar, because the bases for her opinion, though wanting, were not unclear or ambiguous. We therefore uphold the district court's rejection of Ferguson's claim that the ALJ violated SSR 96-5p.

## B. Remand for Consideration of New Evidence

In her second claim, Ferguson contends the district court erred when it declined to remand the matter to the ALJ for consideration of new evidence that was accepted by the Appeals Council, but never considered by the ALJ. The new evidence consists of two letters from psychologist Carol A. Loeffler, Ph.D.

In the first letter, addressed to Dr. Erulkar and dated July 30, 2007, Dr. Loeffler summarized the results of two tests she had administered to Ferguson, the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") and the Symptom Checklist-90-Revised ("SCL-90-R"). A.R. 476, Letter 7/30/07. While acknowledging that the results of the MMPI-2 were technically invalid (because Ferguson was unable to complete the test in one sitting), Dr. Loeffler characterized the testing as suggesting a person who "is

---

**3**Moreover, the remand and reconsideration of Ferguson's claim essentially afforded Ferguson the very sort of re-contacting opportunity she contends she was wrongfully denied. When the ALJ first denied her claim, he had considered Dr. Erulkar's notes of treatment for the period March 13, 2003 to January 21, 2004. A.R. 110, Index of Exhibits; A.R. 403-410, Dr. Erulkar Notes. Although the ALJ did not explicitly mention Dr. Erulkar's notes in his first decision, Ferguson's application was deemed to lack sufficient support. On reconsideration, the ALJ considered additional notes from Dr. Erulkar, reflecting her treatment of Ferguson from March 13, 2004 to November 16, 2005. A.R. 20, Decision p.2; A.R. 427-38, Dr. Erulkar Notes. That is, by supplementing the record, Ferguson had the opportunity to bolster her application through evidence from Dr. Erulkar. In his second decision, the ALJ addressed Dr. Erulkar's notes explicitly and explained why they were deemed deficient. Again, the evidence fell short—not for lack of clarity, but for lack of substance.

experiencing tremendous internal and external distress," who "struggles with distorted thinking with delusions," who feels "hopeless, withdrawn, overwhelmed and guilt ridden," who "ruminates and has rigid rituals and superstitious phobias," and who "may be immobilized by multiple symptoms and complaints." *Id.* Dr. Loeffler characterized these impressions as consistent with the results of the SCL-90-R. She summarized her overall impressions: "Overall, Ms. Ferguson struggles to maintain her hold on reality. Her level of appropriate functioning has been severely compromised. She has reached the point where she is questioning her quality of life and wishes she were dead." A.R. 477, Loeffler Letter 7/30/07.

The second letter is addressed to the Social Security Administration and is dated September 28, 2007. It is directed to the question of Ferguson's ability to work. Dr. Loeffler commented on the same testing results, as well as her impressions made after eleven sessions with Ferguson over the course of six months. In addition to her diagnostic impressions that Ferguson suffers from panic disorder with agoraphobia, dysthymia, and delusional disorder, the letter includes the following observations:

> Ms. Ferguson's mental health issues are severe and interfere significantly with her ability to work, socialize and conduct [activities of daily living]. She has been ill for greater than 14 years with her condition getting increasingly worse each year.
>
> She has avoided recent hospitalizations only because of her family's attentiveness to her needs and tolerance of her behaviors.
>
> Ms. Ferguson's paranoia is so great she cannot develop relationships or concentrate for any period of time on a particular topic. She is easily distracted by noises, etc. as she believes people are trying to get her and/or listen to her conversation. Her delusions are well developed and well entrenched with her paranoia permeating every aspect of her life.
>
> I hope this helps you to understand Cathy Ferguson better and the extent to which her mental illness affects her functioning and precludes her from engaging in normal activities such as working and socializing.

A.R. 478-79, Loeffler Letter 9/28/07. The Appeals Council considered the Dr. Loeffler letters but gave them little weight, concluding the information was cumulative and provided no basis for changing the ALJ's decision.

The district court correctly recognized that a remand under 42 U.S.C. § 405(g) "sentence six" for consideration of additional evidence is warranted only if the evidence is "new" and "material" and "good cause" is shown for the failure to present the evidence to the ALJ. *Foster*, 279 F.3d at 357. These requirements are defined as follows:

> For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." . . . Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." . . . A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. . . . [T]he burden of showing that a remand is appropriate is on the claimant.

*Foster*, 279 F.3d at 357 (citations omitted); *see also Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). The district court concluded that Dr. Loeffler's letters were not "material" because (a) the MMPI-2 results were invalid; (b) no empirical results from the SCL-90-R were provided; (c) Dr. Loeffler's impressions merely confirmed evidence that was already in the record; and (d) the evidence would not alter the ALJ's decision that Ferguson was not disabled.

There is some question whether the district court's refusal to remand is reviewed de novo or for abuse of discretion. *See Templeton v. Comm'r of Soc. Sec.*, 215 F. App'x 458, 464 n.3 (6th Cir. 2007) (declining to decide between the two standards). For the reasons that follow, we hold that Ferguson has failed to carry her burden of establishing entitlement to a remand under either standard of review.

The letters from Dr. Loeffler meet the first of the three factors needed to warrant a § 405(g) "sentence six" remand. Generated in 2007, the letters detailing Dr. Loeffler's

impressions based on testing and treatment provided in 2007 are "new." They do not, however, satisfy the latter two factors.

As justification for her failure to present the kind of evidence embodied in Dr. Loeffler's letters in 2005, when the record was open before the ALJ, Ferguson argues that she had no idea further substantiation of her mental impairments would be necessary before the ALJ rendered his second adverse decision in July 2006. We are not persuaded. When the Appeals Council granted Ferguson the "second bite at the apple," she was on notice that the ALJ had already found her application deficient for lack of objective medical evidence substantiating the severity of her subjective complaints. Attentive to this deficiency, Ferguson supplemented the record with Dr. Erulkar's notes. The problem is that although Dr. Erulkar's notes reflect a diagnosis consistent with that later reached by Dr. Loeffler, they offer no objective medical substantiation and no professional explanation of the severity of the mental impairments. Dr. Erulkar's notes did not cure the deficiency and Ferguson has not shown good cause for her failure to *then* elicit the sort of evidentiary support she later sought from Dr. Loeffler.

It is possible that Ferguson's condition had significantly worsened between 2005 and 2007. Dr. Loeffler's letters indicate a gradual worsening of Ferguson's psychosis and isolation. Yet, in general, Dr. Loeffler's observations were consistent with Dr. Erulkar's notations of Ferguson's complaints two years earlier. There is no apparent reason why the sort of additional information provided by Dr. Loeffler could not have been obtained, even from Dr. Erulkar herself, two years earlier. Ferguson has not carried her burden of showing good cause for her failure to present evidence of the type and quality provided by Dr. Loeffler two years earlier. *See Hollon*, 447 F.3d at 485 (claimant who fails to identify obstacles to timely submission of evidence fails to demonstrate good cause).

Ferguson's showing that Dr. Loeffler's letters are "material" is also wanting. To the extent the letters purport to furnish the objective evidence that had been lacking, they too fail to actually deliver. As the district court observed, Dr. Loeffler herself acknowledged that the MMPI-2 results she purports to rely on were "invalid." Further,

the SCL-90-R results, said to be consistent with the "suggestions" derived from the invalid MMPI-2 results, were cited by Dr. Loeffler, but were not attached to her letter and have not been made part of the record.

In the absence of the substantiating objective evidence, we are left with Dr. Loeffler's impressions. These largely unsupported impressions, being consistent with those reflected in Dr. Erulkar's notes, were reasonably deemed by the Appeals Council and the district court to be merely "cumulative," confirming the pre-existing evidence that Ferguson was paranoid, withdrawn, and subject to panic attacks. Dr. Loeffler's letters purport to explain the severity of Ferguson's mental impairments, but Dr. Loeffler's impressions were derived from testing and treatment provided in 2007, almost two years *after* the ALJ conducted the second hearing. Among these impressions are Dr. Loeffler's observations that Ferguson is "becoming increasingly more psychotic," is "experiencing increased intrusive thoughts around past abuse which further exacerbates her anxiety and depression," and is "getting increasingly worse each year." A.R. 477, 478. Because the information added by Dr. Loeffler's letters comes over a year after the ALJ's denial of benefits and, on its face, evidences a subsequent deterioration in condition after the second hearing, it was properly deemed "immaterial" because it does not necessarily speak to Ferguson's condition at the relevant time. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003) (evidence of subsequent deterioration in condition deemed immaterial); *Wyatt v. Sec. of Health and Human Services*, 974 F.2d 680, 685 (6th Cir. 1992) (same).

Accordingly, Ferguson having failed to show that the new evidence is "material" and that there is "good cause" for not presenting it earlier, we find no error in the district court's refusal to order a § 405(g) sentence six remand.

## III.  CONCLUSION

For the foregoing reasons, the district court's judgment affirming the Commissioner's denial of Ferguson's claims for disability benefits and supplemental security income is **AFFIRMED**.