**<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>**

File Name: 15a0062n.06

Case No. 14-1783

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ANITA HARRIS, | ) | **FILED** |
| | ) | Jan 21, 2015 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | OPINION |

BEFORE:  MERRITT, STRANCH, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.**  Anita Harris appeals the district court's judgment affirming the Commissioner's denial of her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-83f.  Specifically, Harris challenges the administrative law judge's ("ALJ") determination that she acquired skills from her past relevant work that are transferable to other occupations existing in significant numbers in the national economy.  Because substantial evidence supported the ALJ's decision, we **AFFIRM**.

**I.**

**A.    Factual Background**

Harris was diagnosed as a diabetic in 1980.  She has a history of degenerative joint disease since 1995, when she underwent arthroscopic surgery on her right knee.  This condition has led to chronic pain, problems with balance, and difficulties walking, bending, and climbing stairs.  Harris requires a cane to walk and suffers from hypertension, which she controls with prescription medication.  She is also morbidly obese.

In mid-2007, Harris was hospitalized after suffering a burn near her right ankle from a space heater, which developed into a non-healing diabetic ulcer.  Harris' discharge report indicates diagnoses of sepsis, poorly controlled diabetes, anemia, and hypertension.  The wound required more than a year's worth of treatment, including strict elevation of the leg and weekly use of compression dressings.  By October 5, 2009, the wound had completely closed.

In February 2009, Harris slipped and fell on ice.  In April, she visited an orthopedic surgeon, Dr. Richard Krugel, who noted tenderness in her shoulder and diagnosed rotator cuff tendinitis and mild cervical radiculitis.  After several weeks of physical therapy and medication failed to abate her pain, Dr. Krugel referred Harris to Dr. Roderick Claybrooks for evaluation for surgery.  Following an evaluation on August 19, 2009, Dr. Claybrooks diagnosed Harris with disc herniation and degenerative disc disease from C4 to C7, as well as a tear of the right rotator cuff.  Dr. Claybrooks recommended surgical intervention, but Harris refused, noting that she could tolerate her symptoms.  At a later evaluation on January 27, 2010, Dr. Claybrooks noted "long tract signs of myelopathy" and warned Harris about "the risk of quadriplegia without surgery."  In numerous subsequent visits to Dr. Krugel, and despite her worsening symptoms, Harris expressed steadfast reluctance to undergo neck surgery.  According to Harris, she

continues to experience extreme, constant pain from the right side of her neck to her fingertips, as well as migraines related to the pressure on her spine.

## B.     Procedural History

Harris filed her applications for disability benefits and supplemental security income on May 9, 2006, when she was fifty years old. She claimed that, beginning on June 1, 2005, her various medical ailments prevented her from continuing in her job as a licensed practical nurse ("LPN"), which she had performed for over twenty years.[1] After the Commissioner denied Harris' application for benefits, she requested and received a hearing before an ALJ on September 23, 2008.

At that hearing, the ALJ heard testimony from Harris, as well as Pauline Pegram, a vocational expert. Pegram questioned Harris regarding her work history in order to determine the amount of physical exertion required at each of her previous jobs. Pegram characterized all of Harris' previous jobs as skilled or semi-skilled, each but one requiring at least a light level of exertion; the exception was Harris' job as a "nurse records coordinator at a substance abuse clinic," which was a sedentary position.[2] She testified that the records-coordinator position was akin to a position as a "receptionist in a doctor's office or a clinic." According to Pegram, Harris obtained skills from her work in the medical field that would transfer to other LPN and nursing jobs. However, given that Harris' receptionist job at the substance abuse clinic involved data entry over a decade ago, Pegram testified that any clerical skills she obtained in that position were "obsolete and would not be transferable." Pegram testified that, based on her "many physical issues," Harris could not perform any of her past work.

---

[1]In fact, Harris continued working as a part-time LPN until mid-2007, when she was hospitalized for the non-healing ulcer on her right leg. Prior to becoming an LPN, Harris completed two years of community college, as well as a year at a vocational nursing program.
[2]Harris testified that the records-coordinator position, which she held in the early to mid-1990s, involved data entry.

In a written decision issued on December 28, 2008, the ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920 and found that Harris was not disabled.[3] Specifically, the ALJ found that: (1) at step three, Harris did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (2) at step four, Harris was able to perform her past relevant work as a "nurse/records co-coordinator"; and (3) at step five, in light of her age, education, work experience, and residual functional capacity ("RFC") for light work,[4] Harris could perform a significant number of other jobs in the national economy. The ALJ noted that "[t]he fact that the impairments did not prevent the claimant from working . . . strongly suggests that same would not currently prevent work."

Harris sought to appeal the ALJ's decision pursuant to 20 C.F.R. §§ 404.1775 and 416.1575. On October 29, 2009, the Appeals Council granted Harris' request for review and vacated the ALJ's determination. Specifically, the Appeals Council instructed the ALJ to consider medical evidence regarding the non-healing injury to Harris' leg, to adjust her RFC assessment as necessary, and, if warranted, to obtain supplemental evidence from a vocational expert to determine whether Harris had acquired any transferable skills that would allow her to perform other jobs in the national economy.

---

[3] Under the Social Security Act, a claimant is "disabled" if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant qualifies for benefits "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

[4] The definition of RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). ALJs assess RFC holistically in view of a claimant's medical evidence and history, taking into account the claimant's physical and mental abilities. *See id.* §§ 404.1545(b)-(e), 416.945(b)-(e). RFC determinations fall into one of five categories: sedentary work (involving lifting of no more than ten pounds at a time); light work (no more than twenty pounds at a time); medium work (no more than fifty pounds at a time); heavy work (no more than 100 pounds at a time); and very heavy work (more than 100 pounds at a time). *Id.* §§ 404.1567, 404.967.

The ALJ held a second hearing on October 4, 2010, at which Harris and a second vocational expert, Jennifer Turecki, testified.[5] Turecki asked Harris whether her previous job as a medical records clerk required typing. Harris replied that it did not. Turecki then testified that a hypothetical claimant of Harris' age, education, and experience, with the capacity to perform light work but with certain exertional limitations, such as reaching overhead with the right upper extremity, could not perform any of Harris' past relevant work. According to Turecki, however, Harris could perform the job of a "general office receptionist," which she characterized as a semi-skilled, sedentary position. She testified that there were 1,000 such jobs in southeastern Michigan and that Harris had acquired transferable skills from her prior receptionist position, such as greeting people, giving information, and answering phones. According to Turecki, the general receptionist job would not require typing, would involve a sit-stand option, and would allow leg elevation at the footstool level.

In an order dated December 23, 2010, the ALJ again determined that Harris was not disabled. Taking into account the medical evidence surrounding Harris' non-healing ulcer, the ALJ modified her RFC finding to "less than a full range of sedentary work." The ALJ determined that Harris could not perform any of her past relevant work. However, the ALJ found that Harris acquired transferable skills in her past job as a medical receptionist/records clerk, including "greeting people, giving of information, and answering of telephones." Based on the "persuasive and well supported" testimony of the vocational expert, the ALJ determined that, even with the need to elevate her feet to footstool level and to walk with a cane, Harris

---

[5] Harris' counsel did not object to Turecki testifying as a vocational expert.

could perform the job of a "general office receptionist (DOT # 237.367-038)[6] with 1,000 such jobs in existence in Southeastern Michigan."

Harris again requested an appeal of the ALJ's determination. On June 17, 2013, the Appeals Council denied Harris' request for review, rendering the ALJ's decision the final decision of the Commissioner. Harris sought judicial review of the Commissioner's decision by filing a complaint in the district court, pursuant to 42 U.S.C. § 405(g). The parties filed cross-motions for summary judgment.

On June 2, 2014, the district court entered summary judgment in favor of the Commissioner. *Harris v. Comm'r of Soc. Sec.*, No. 13-cv-13519, 2014 WL 2452951 (E.D. Mich. June 2, 2014). Specifically, the court rejected Harris' argument that Turecki's conclusion regarding transferable skills lacked a basis. *Id.* at *10. The court noted that Harris' counsel had the opportunity at the hearing to cross-examine Turecki on this subject and declined to do so. *Id.* at *11. Moreover, the court rejected Harris' argument that her abilities to greet people, give information, and answer phones were "tasks" rather than transferable "skills." *Id.* at *11-12.

## II.

### A. Standard of Review

This Court reviews de novo a district court's decision in a social security case, directly examining the Commissioner's findings and conclusions "as if it were the first reviewing court." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). The burden of proving disability lies with the claimant. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010). We must affirm the Commissioner's decision "absent a determination that the ALJ failed

---

[6] "DOT" stands for Dictionary of Occupational Titles, which "is a reference, produced by the United States Department of Labor, listing thousands of jobs." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 851 n.6 (6th Cir. 2010) (citing 20 C.F.R. § 404.1566(d)); *see also* 20 C.F.R. § 416.966(d).

to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle*, 609 F.3d at 854; *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

The substantial-evidence standard does not permit reviewing courts to resolve conflicts in evidence or to decide questions of credibility. *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). We need not necessarily agree with the Commissioner's determination in order to affirm it; "[e]ven if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence." *Kyle*, 609 F.3d at 854-55. This holds true even if substantial evidence also supports the claimant's position. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

## B. Transferability of Skills

On appeal, Harris challenges only the ALJ's determination regarding the transferability of her skills to other jobs in the national economy. Harris argues that she acquired no skills that would transfer to sedentary work, including in her previous job as a "medical receptionist record clerk." The DOT (# 245.362-010) describes the duties of that job as follows:

> Compiles, verifies, types, and files medical records of hospital or other health care facility: Prepares folders and maintains records of newly admitted patients. Reviews medical records for completeness, assembles records into standard order, and files records in designated areas according to applicable alphabetic and numeric filing system. Locates, signs out, and delivers medical records requested by hospital departments. Compiles statistical data, such as admissions, discharges, deaths, births, and types of treatment given. Operates computer to enter and retrieve data and type correspondence and reports. May assist other workers with

>coding of records. May post results of laboratory tests to records
>and be designated Charting Clerk (medical ser.).

Harris asserts that the ALJ's reliance on Turecki's opinion regarding transferable skills was erroneous because her previous duties—including discharging patients and scheduling surgical appointments—are not encompassed in the DOT definition.

Harris also argues that the testimony of a second vocational expert was "both unnecessary and potentially prejudicial to the administration of justice," citing the principle of res judicata and analogizing her case to *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). Finally, Harris argues that Turecki's testimony identified aptitudes rather than skills—i.e., that the abilities to greet people, give information, and answer phones are innate traits rather than learnable skills.

As an initial matter, we note that the ALJ followed the proper five-step legal standard for determining disability set forth in 20 C.F.R. §§ 404.1520 and 416.920. We have summarized the five steps as follows:

>1. If claimant is doing substantial gainful activity, [she] is not disabled.
>
>2. If claimant is not doing substantial gainful activity, [her] impairment must be severe before [she] can be found to be disabled.
>
>3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and [her] impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
>4. If claimant's impairment does not prevent [her] from doing her past relevant work, [she] is not disabled.
>
>5. Even if claimant's impairment does prevent [her] from doing [her] past relevant work, if other work exists in the national economy that accommodates [her] residual functional capacity and

> vocational factors (age, education, skills, etc.), [she] is not disabled.[7]

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

Harris' first argument—that she did not perform the duties of a "medical receptionist record clerk" as defined in the DOT and therefore did not acquire the transferable skills Turecki ascribed to her—cannot succeed.[8]  Turecki testified that the skills utilized in the "medical receptionist record clerk" position would transfer to the position of "general office receptionist." However, Harris highlights Pegram's testimony at the first hearing, which described the prior receptionist job as a simple data-entry position requiring skills that would now be "obsolete." Despite this apparent conflicting testimony,[9] there was substantial evidence in the record that Harris' previous work as a medical receptionist provided her with the skills requisite to performing the work of a general office receptionist.  As noted by the district court, Harris testified more extensively at the second hearing regarding her duties as a medical receptionist. She testified as follows:

> Q  Okay.  Any other work that you can think of, aside from being a licensed practical nurse and a home health aide in the 15 years prior to your last work in June of 2007?
>
> A  Medical receptionist.

---

[7] The burden rests with the claimant through step four.  "[A]t step five of the inquiry, . . . the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).

[8] To the extent Harris attempts to argue that the ALJ was required to assess her transferable skills with strict reference to the DOT, that argument fails.  *See Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) ("[T]he ALJ and consulting vocational experts are not bound by the [DOT] in making disability determinations because the Social Security regulations do not obligate them to rely on the [DOT's] classifications.").

[9] The Commissioner argues that the failure of Harris' counsel to cross-examine Turecki regarding this conflict in the testimony or to identify it before the ALJ defeats her claim on appeal.  We have held that, where there is an alleged conflict between the testimony of a vocational expert and the DOT, and the claimant "was afforded a full opportunity to cross-examine" the expert regarding said conflict, an ALJ has no further duty to interrogate. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009).  Although it is not dispositive, "the failure by [Harris'] counsel to cross-examine Turecki on this issue severely undermines [her] request for relief."  *Harris*, 2014 WL 2452951, at *11.

Q  All right.  And what did that involve?

A  Discharging patients from –

Q  The –

A  – doctors.

. . . .

Q . . . .  This medical receptionist work – tell me a little bit more about that.  You said you discharged patients.  What else did you do?

A  I assisted the doctor with exams –

Q  Okay

A  – for OB/GYN doctor, internal medicine doctor, and a gastroenterologist, and an ENT doctor.

Q  Okay.  And when you assisted them, what were you doing?

A  With vaginal exams, injections.

Q  Okay.

A  Instruments they needed for the exams, for the patients.  And gave the patients discharge instructions, set up their appointments for the surgery.

This testimony provided the ALJ substantial evidence with which to determine that Harris had acquired the abilities to greet people, give information, and answer phones.  As Harris' own testimony indicates, interacting with patients, giving them instructions, and setting up appointments were central parts of her duties as a medical receptionist.  Accordingly, Harris' first argument fails.

Harris' second argument—that the ALJ should not have heard additional testimony from a vocational expert—is equally unavailing.  At the second hearing, Harris' counsel expressly indicated that he had no objection to Turecki's anticipated testimony.  Harris has therefore

waived the argument on appeal, and her challenge to the ALJ's admission of Turecki's testimony is subject to plain-error review. *See Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 548 (6th Cir. 2003). To satisfy this standard, an appellant must show "(1) error, (2) that is plain, and (3) that affects substantial rights." *Griffin v. Finkbeiner*, 689 F.3d 584, 598 (6th Cir. 2012) (quoting *United States v. Arnold*, 486 F.3d 177, 194 (6th Cir. 2007) (en banc)) (internal quotation marks omitted).

Harris argues that Pegram settled the issue regarding her vocational skills at the first hearing, implying that, under *Drummond*, res judicata barred the admission of additional vocational-expert testimony. *See* 126 F.3d at 840. But *Drummond* is inapplicable here. In that case, one ALJ made a finding that the claimant had an RFC for sedentary work, which the Appeals Council finalized on review. *Id.* at 838. At a second hearing, however, a different ALJ determined that the claimant had an RFC for medium work. *Id.* at 839. We rejected that determination, holding that, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* at 842; *see also* 42 U.S.C. § 405(h). Res judicata barred relitigation of the RFC issue in *Drummond* because "a final judgment ha[d] been reached." 126 F.3d at 840. Here, the Appeals Council vacated the ALJ's initial determination and did not render a final judgment until December 23, 2010, when it denied Harris' request for review.[10]

Harris' third argument—that greeting people, giving information, and answering phones are aptitudes rather than skills—also misses the mark. We have noted this distinction before:

> An "aptitude" is an "inclination, a natural ability, talent, or capacity for learning." A "skill" is a "learned power for doing something competently." In short, an aptitude is an innate ability

---

[10] Moreover, as noted by the district court, the ALJ expressly declined to make a finding regarding transferability of skills after the first hearing. *See Harris*, 2014 WL 2452951, at *10. In her first decision, the ALJ found that "[t]ransferability of job skills [was] not material to the determination of disability . . . ."

> while a skill is a learned ability. While a person may have natural talents including dexterity, general coordination, space relations, etc., that same person may not have the particular learned ability to do a specific job.

*Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 311-12 (6th Cir. 1983) (citations omitted). A policy statement of the Social Security Administration defines a skill as "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn)." SSR 82-41, 1982 WL 31389, at *2 (Jan. 1, 1982). Where it is unclear whether a job is skilled or unskilled, "occupational reference materials or specialists should be consulted." *Id.* Clerical skills "may be readily transferable to . . . semiskilled sedentary occupations," *id.* at *3, and have "universal applicability across industry lines" such that their transfer "can usually be accomplished with very little, if any, vocational adjustment," *id.* at *6.

According to Harris, the abilities identified by Turecki and the ALJ "are not sufficiently complicated to rise to the level of a skill. Rather, they encompass an inherent sociability that a worker either has or lacks." This argument fails on its own terms. While a person may be innately gregarious, this does not necessarily mean that she will be effective at dealing with the public, delivering information, or operating the telephone. It is not difficult to imagine a sociable person performing these duties in a lackluster fashion.

Moreover, a substantial amount of authority undermines Harris' argument. In *Atwater v. Astrue*, for example, the Second Circuit affirmed the denial of disability benefits based on a finding of transferability where the claimant's "past employment involved clerical duties, light typing, filing, answering the phone, providing information to callers, and directing people to assistance." 512 F. App'x 67, 69 (2d Cir. 2013). Numerous other decisions within this Circuit

and elsewhere have reached similar outcomes. *See, e.g.*, *Kyle*, 609 F.3d at 857 (referencing "the learned skill of interacting with people"); *Deneweth v. Astrue*, No. 10-11657, 2010 WL 5330490, at *1 (E.D. Mich. Dec. 21, 2010) (upholding the ALJ's determination that the claimant, who suffered from advanced arthritis in her right knee, "acquired skills transferable to sedentary work such as public contact, office administration, data entry, phone answering, general clerical, and record keeping"); *Bjornholm v. Shalala*, 39 F.3d 888, 890 (8th Cir. 1994) (holding that the claimant's abilities "to handle money, to deal with the public, and to record routine information" in her prior job as a waitress were transferable skills); *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1309-10 (6th Cir. 1990) (holding that "dealing with customers" was a transferable skill); *Kappesser v. Comm'r of Soc. Sec.*, 69 F.3d 537, No. 95-5387, 1995 WL 631430, at *3 (6th Cir. Oct. 26, 1995) (unpublished table decision) (holding that clerical skills, including answering phones and issuing patient discharge instructions, were transferable); *Taylor v. Sec'y of Health & Human Servs.*, 891 F.2d 292, No. 89-1260, 1989 WL 150763, at *4 (6th Cir. Dec. 14, 1989) (unpublished table decision) (holding that the ability to "deal with the general public" was a transferable skill).

Accordingly, substantial evidence supported the ALJ's determination that Harris acquired transferable skills in her previous work. In light of the deferential substantial-evidence standard, which "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts," we see no reason in the record to upend the decision of the Commissioner. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)) (internal quotation marks omitted).

**III.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.