**NOT RECOMMENDED FOR PUBLICATION**
File Name: 16a0210n.06

No. 15-3964

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 14, 2016
DEBORAH S. HUNT, Clerk

TIMOTHY E. GLASCO,                          )
                                            )
    Plaintiff-Appellant,            )
                                            )
    v.                              )        ON APPEAL FROM THE
                                            )        UNITED STATES DISTRICT
COMMISSIONER OF SOCIAL SECURITY,            )        COURT FOR THE NORTHERN
                                            )        DISTRICT OF OHIO
    Defendant-Appellee.             )
                                            )

BEFORE: DAUGHTREY, MOORE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Timothy Glasco, an aggrieved applicant for disability insurance benefits, appeals the district court's decision denying his motion to remand under "sentence six" of 42 U.S.C. § 405(g). We affirm.

I.

Glasco has battled a number of medical ailments for most of his adult life. Relevant here are those conditions that affected his ability to work between February 24, 2004, plaintiff's alleged disability onset date, and December 31, 2008, plaintiff's date of last insured. Glasco suffered a back injury in 2004 (the precise date is unclear from the record) when a beam fell on his head. This injury, in turn, exacerbated a pre-existing condition involving severe joint pain in Glasco's arms, legs, and back. In August 2004, Glasco visited Dr. Vivian Hobayan, reporting

widespread pain in his muscles and joints. Although Dr. Hobayan's treatment seemed promising at first, Glasco's pain persisted. The record shows that he visited Dr. Mary Ann Meyers on November 9, 2005, complaining of head and neck pain associated with fibromyalgia and "markedly diminished" sensitivity in his upper limbs. In August 2006, Glasco returned to see Dr. Hobayan, at which point she diagnosed Glasco with fibromyalgia, myofascial pain, and osteoarthritis. She prescribed Lyrica, which Glasco reported on multiple occasions partially relieved his symptoms.

Plaintiff applied for social security disability insurance benefits on January 5, 2012. This was not his first application. Glasco previously filed a claim in 2004, which was denied. Unfortunately, the file relating to that claim was destroyed, and, therefore, the Commissioner could not rely on the prior adjudication in deciding plaintiff's 2012 application claim. In his 2012 application, Glasco listed ten medical conditions that limited his ability to work, including fibromyalgia, hemochromatosis, and depression. He also named eleven individuals or organizations "who may have medical records about any of [his] physical and/or mental condition(s) . . . ." The state agency in charge of processing disability insurance applications requested records from each of the medical providers.

After reviewing the medical records—most of which were from outside the relevant 2004–to–2008 time period—the agency denied Glasco's claim. It determined that Glasco's records did not establish a medical condition severe enough to prevent him from working during the relevant time period. Glasco sought reconsideration. As part of that process, he provided the names of three additional medical providers who treated him between 2004 and 2008. Taking into account these additional records, the agency affirmed its earlier decision to deny benefits.

Plaintiff sought a hearing before an administrative law judge (ALJ). The agency advised plaintiff multiple times of his right to legal representation, including from the ALJ himself at the outset of plaintiff's hearing. Plaintiff declined. At the hearing, plaintiff testified that he suffered from constant joint pain, which he said was exacerbated by cold, wet weather and only partially relieved by medication and other home remedies. Glasco indicated that he could not sit or stand for longer than thirty minutes to an hour at a time, though he walked "a lot" and could lift and carry forty to fifty pounds, allowing him to help out with certain household chores. Plaintiff's wife, Roberta Glasco, corroborated that plaintiff suffered from intermittent, but significant, pain in his back and limbs, and that he could not sit "for any real length of time." However, she also testified that Glasco had significant balance problems, hindering his ability to walk, and he could not lift much of anything. The third and final witness, vocational expert George Coleman, III, testified that, assuming someone had physical limitations that restricted him to only "light" or even "sedentary" work, a significant number of jobs fitting that description—including hand packager, facility rental clerk, and routing clerk—existed in the national economy between 2004 and 2008.

On the basis of the witnesses' testimony and medical records on file, the ALJ determined that plaintiff was not entitled to disability insurance benefits because his impairments were not so severe that he could not perform "light" jobs, which were available in significant numbers in the national economy. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied his request for review.

Plaintiff then obtained legal counsel and filed a complaint in federal district court challenging the ALJ's decision. Plaintiff filed a motion to remand, claiming that he obtained seven sets of medical records from the relevant time period that were not included in the file

below.  As part of his motion, he faulted the Commissioner for failing to adequately develop the record.  Unable to determine whether plaintiff was seeking a so-called "sentence four" or "sentence six" remand,[1] the magistrate judge recommended that the motion be denied under either theory.  To the extent the motion sought a "sentence six" remand, the magistrate concluded that the evidence was not new or unavailable to plaintiff during the administrative proceedings.  The district court adopted the recommendation over plaintiff's objections and entered an order denying the motion and affirming the denial of disability insurance benefits.

On appeal, plaintiff has abandoned any claim regarding a "sentence four" remand, and he does not challenge the merits of the ALJ's decision to deny his application for benefits.  His sole contention is that the district court erred in denying his motion to remand under sentence six of § 405(g).[2]

II.

A claimant who is denied social security disability insurance benefits may seek review of the decision in federal court.  *See* 42 U.S.C. § 405(g).  As part of that review, the district court may remand the case for additional proceedings "upon a showing that there is new evidence

---

[1]As we recently explained, "Section 405(g) permits two types of remand: (1) pre-judgment, under sentence six; and (2) post-judgment, under sentence four." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 725 n.3 (6th Cir. 2014).  Whereas a "sentence four" remand involves a substantive ruling by the court as to the correctness of the Commissioner's decision and a subsequent remand for further proceedings in light of that determination, *see Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006), a "sentence six" remand is unrelated to the merits of the Commissioner's decision and is appropriate when "new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding," *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

[2]It is unsettled in this circuit whether we review § 405(g) remand decisions de novo or for an abuse of discretion. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). We need not settle it here because the outcome is the same under either standard.

which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" *Id.* Under this so-called "sentence six" remand, a claimant wishing to submit additional evidence to the ALJ must establish (1) that the evidence is "new" or was otherwise unavailable to the claimant, (2) that the evidence is "material," and (3) that he or she has "good cause" for failing to submit the evidence below. *Hollon*, 447 F.3d at 483. Failure to establish any one of these three elements is fatal to the moving party's request. *See Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 n.1 (6th Cir. 1988).

The first requirement of a sentence six remand is that the evidence must not have been in existence or available to the claimant at the time of the administrative proceeding. *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). Plaintiff concedes that none of the additional evidence is "new" in the sense that it was not in existence at the time of the administrative proceedings. He argues instead that it was "unavailable" to him during the administrative proceedings. In support of this contention, plaintiff advances a combination of mental health issues, lack of legal representation, and bureaucratic incompetence. We address each in turn.

In his brief on appeal, plaintiff contends that his mental health had significantly deteriorated by the time he applied for benefits and attended his hearing before the ALJ, "rais[ing] questions" about his competence to gather information relating to the pertinent time period. However, as the party who bears the burden of establishing "unavailability," plaintiff must do more than "raise questions" about his capacity to comprehend the nature of the administrative proceedings below. *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) ("It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405."). Plaintiff all but concedes he failed to meet this burden when he admits "that the mental health evidence between those dates [his 2012

application and his August 2013 hearing] is at best inadequate." In any event, the record shows that plaintiff was well aware of his obligation to provide information relating to his disabilities and, in particular, any treatment history between 2004 and 2008. The clearest evidence of this is the fact that, during reconsideration of the initial denial of benefits, Glasco provided the agency with the names of three additional treating sources "he believes he seen [sic] b/w 2004-2008[.]"

Plaintiff also argues that if he had legal representation, these records would have been included in his file. But even plaintiff agrees that "lack of representation, by itself, may not be sufficient to warrant a remand." *See also Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986) (mere fact that a claimant is unrepresented is not grounds for reversal). That plaintiff may have fared better with retained counsel does not make evidence "unavailable" as to him. As indicated above, plaintiff understood the significance of obtaining medical records from the 2004–to–2008 timeframe. Furthermore, Glasco received multiple notices regarding his right to representation, as well as a detailed explanation from the ALJ himself. Having stated on the record that he understood his rights and wished to "go forward with [the hearing]," there is no indication plaintiff's decision to forego counsel was unknowing or involuntary.

This brings us to the predominant focus of plaintiff's unavailability argument: bureaucratic incompetence. In his first attack along these lines, plaintiff argues that the agency failed to notify him that his prior file was destroyed and that the accompanying records were therefore not in his current file. He also contends that the agency never told him he needed to provide records from 2004 to 2008. We disagree on both points. In its initial decision denying Glasco's application, the agency indicated that "[the p]rior file has been destroyed. Cannot adopt prior ALJ/AC decision." The accompanying notice also listed the medical reports used in making the initial determination. Furthermore, the agency provided Glasco the contents of his

file in advance of his hearing before the ALJ. Thus, Glasco was well aware both that the prior file had been destroyed and of the contents of his current file. Furthermore, as indicated above, Glasco followed up with the agency and provided three treating sources specific to the 2004–to–2008 timeframe, demonstrating that he was well aware he needed to provide information relating to that period.

In his second line of attack, plaintiff contends that the agency provided misleading and ambiguous document requests to his medical providers, rendering the record incomplete. Again, we disagree. First, four of the seven sets of medical records plaintiff wishes to submit on remand—those from Drs. Ahmad Al-Khatib, Karri Krendl, and Hernan Jimenez-Medina, and the Ohio Rehabilitations Services Commission—come from sources that plaintiff never disclosed to the agency during his application process. The agency can hardly be blamed for not requesting information from treating sources plaintiff himself did not disclose. Plaintiff observes that these sources were referenced in the medical records on file, but he provides no authority for the proposition that the agency must comb through thousands of pages of medical records for references to other potential treating sources, to which it must then submit record requests. To the contrary, claimants are responsible for identifying their "medical source(s)," 20 C.F.R. § 404.1512(c)(1), after which the Commissioner must "make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports," 20 C.F.R. § 404.1512(d). "Every reasonable effort" requires the Commissioner to "make an initial request for evidence from your medical source," *i.e.*, those providers identified by the claimant. 20 C.F.R. § 404.1512(d)(1). That is precisely what happened in this case.

As for the remaining three sources of medical records, which plaintiff disclosed in his application and to whom the state agency sent record requests, plaintiff contends that these

treating sources did not produce all relevant documentation because the agency's requests were confusing and ambiguous. Yet, the agency's record request to one of the providers, Dr. Hobayan, could not have been clearer. It said, "Please send all records from 2004-2008." With respect to the remaining two providers, Drs. Jonah Ukiwe and Ahmad Anouti, the basis for plaintiff's characterization of their record requests is unclear, as those forms are not in the record. If, like others in the record, the requests specified no dates at all, that does not make them ambiguous, it simply makes them overbroad.

Even if we assume that Dr. Hobayan's, Dr. Ukiwe's, and Dr. Anouti's failure to provide all relevant records made the newly obtained records "unavailable" to plaintiff, he fails to establish their materiality. *See* 42 U.S.C. § 405(g) (requiring that "there is new evidence *which is material . . .*" (emphasis added)). In order to establish that new evidence is material, a plaintiff must show that there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sizemore*, 865 F.2d at 711). Plaintiff makes no argument with respect to the materiality of the medical records from Drs. Hobayan and Anouti. He has therefore abandoned any claim regarding these medical providers. *See Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998) (arguments not raised "are considered abandoned and not reviewable on appeal"). With respect to Dr. Ukiwe, plaintiff argues that his medical records contain an "official[] diagnos[is]" of depression, undermining the ALJ's finding that depression was not a severe impairment because "[the] underlying diagnosis and treatment is [sic] absent."

Plaintiff overstates the record. Dr. Ukiwe's purported "diagnosis" of depression was formed without the support of any "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. Instead, he referred Glasco to his psychiatrist, Dr.

Woodrow, for mental health treatment. Notably, Dr. Woodrow's medical records are not in the administrative file, nor did plaintiff seek to add them as part of his motion to remand. This single reference to depression by a non-specialist without supporting medical evidence does not make it reasonably probable that the ALJ, who acknowledged similar references to a history of depression in the existing administrative record, would come to a different result on remand. *See Sizemore*, 865 F.2d at 711–12 (medical assessment unsupported by "specific laboratory test or diagnostic procedure" is not entitled to deference and therefore would not make different result reasonably probable on remand); *see also* 20 C.F.R. § 404.1527(c) (discussing the factors for determining weight given to medical opinions).

To summarize: despite plaintiff's multifaceted argument to the contrary, the evidence he seeks to submit on remand was not "unavailable" to him during the administrative proceedings. Even without counsel, Glasco understood the importance of submitting medical records from the 2004–to–2008 time period, and the state agency fulfilled its duty to make reasonable efforts in helping plaintiff compile medical records in support of his claim. And, to the extent certain medical records were not included in the administrative file, despite all reasonable diligence by Glasco and the state agency, it is not reasonably probable that those records would lead to a different result on remand. For these reasons, plaintiff is not entitled to a "sentence six" remand.

III.

We affirm the judgment of the district court.